(140 App. Div. 395.)

## BARNES v. GARDINER.

(Supreme Court, Appellate Division, First Department. November 4, 1910.)

1. TRUSTS (§ 289*)—ACCOUNTING—DUTY TO ACCOUNT.
    A trustee is bound to account to the beneficiary for money received and disbursed for her, and for property held by him as trustee.
    [Ed. Note.—For other cases, see Trusts, Cent. Dig. § 408; Dec. Dig. § 289.*]

2. TRUSTS (§ 328*)—ACCOUNTING—FRAUDULENT ACCOUNTING.
    A purported acknowledgment of a final accounting by a trustee which was signed by the beneficiary under the erroneous belief that it covered all charges and disbursements made by the trustee, and without any explanation of its legal effect, which belief was fraudulently induced by the trustee, would not bar the beneficiary's right to a complete accounting.
    [Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 488, 489; Dec. Dig. § 328.*]

3. TRUSTS (§ 326*)—ISSUES REFERRED.
    Where the complaint in an action against a trustee for an accounting also alleged that plaintiff, who was of full age, was induced to sell certain property to defendant and his wife at much less than its value, and to purchase other property at more than its real value, but did not allege, nor did the proofs show, any fraud in inducing the sales or purchases, or that defendant derived any profit from the transactions, it was improper to order a reference on the issues so arising; a reference being proper only for taking an account as to property received as trustee, and as to transactions found to have been fraudulent.
    [Ed. Note.—For other cases, see Trusts, Dec. Dig. § 326.*]

Appeal from Special Term, New York County.

Action by Kate R. Barnes against Alfred P. Gardiner. From an interlocutory judgment referring certain issues to a referee and directing an account to be taken, defendant appeals. Affirmed as modified.

See, also, 133 App. Div. 576, 118 N. Y. Supp. 120.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, McLAUGHLIN, and DOWLING, JJ.

Abram I. Elkus, for appellant.
George Gordon Battle, for respondent.

DOWLING, J. Prior to June, 1903, the plaintiff resided with her sister, the wife of the defendant, and with said defendant, in the home of her grandaunt Mary Jane Radway. After the death of the last named, in June, 1903, leaving an estate composed of both real and per-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

sonal property and wherein both plaintiff and her sister were interested, plaintiff continued to reside with her sister and the defendant for upwards of three years. During this time and until December, 1908, the defendant acted as business manager, agent, and adviser of the plaintiff in relation to her property, both real and personal, and was intrusted by her with the possession and control of the personal property, and with the collection of the rents of her real estate. After the marriage of the plaintiff, she requested defendant to deliver all property belonging to her and remaining in his hands to her attorney, and to render an accounting of his proceedings. Plaintiff contends that upon the receipt by her attorney of the papers and securities delivered by defendant she discovered that a document signed by her on January 12, 1907, purported to be an acknowledgment by her of the receipt of a full and satisfactory accounting to date by defendant of all his transactions in her behalf. The plaintiff now brings this action, wherein the complaint contains the following allegations:

"(5) For a period of about 3½ years after the death of the said Mary Jane Radway the plaintiff continued to reside with her sister Adele R. Gardiner and the defendant. Being herself without experience in business matters, and having implicit trust and full confidence in the integrity, ability, and faithfulness of the defendant, the plaintiff shortly after the death of her said grandaunt intrusted to him full charge, possession, and control of the various bonds, mortgages, stock certificates, and other securities in which her personal property was invested, and the defendant, in consideration of the sum of $1,000 annually thereafter to be paid to him by the plaintiff, promised to manage the estate of the plaintiff, both real and personal, and to act as her agent and adviser in relation thereto.

"(6) Thereafter, and until about the 1st day of December, 1908, the plaintiff left to the defendant the management, direction, and control of her property, permitted him to collect her income for her, conformed to his views and instructions relative to its disposition, and made such transfers of her real and personal estate as he advised and executed such deeds, receipts, transfers, and other documents as he suggested, in many instances without knowing the contents or legal significance of said instruments, and in all cases relying solely upon the representations of the defendant that her interests would thereby be protected and promoted."

"(8) During the month of December, 1908, certain securities and personal property of the plaintiff of the value of less than $20,000 were delivered by the defendant to the plaintiff's attorney, and certain papers were submitted to him which purported to be an accounting by the defendant. From the statements in said papers contained, it appears that the defendant has collected large sums of money belonging to the plaintiff which he has failed to pay to her or to invest for her account, that he has caused the plaintiff to transfer to him or his wife, Adele R. Gardiner, the plaintiff's valuable real estate and stock corporation interests at prices far below their real value, and has caused the plaintiff to purchase of himself and his wife, Adele R. Gardiner, their interest in real and personal property at prices far in excess of their true value.

"(9) Among said papers so submitted as and for the accounting of the defendant is a copy of a paper dated January 12, 1907, purporting to be signed by the plaintiff and to be a receipt and full and satisfactory accounting by the defendant for all business transacted by him for the plaintiff to that date. The plaintiff has no recollection of having signed such a paper, and, if the same was signed by her, it was in ignorance of its contents and of its significance, and no accounting in fact was made by the defendant to the plaintiff at that time, or at any time before or after said date, prior to the month of December, 1908, and her signature to said paper was procured fraudulently and for the purpose of securing to the defendant and to his wife, Adele R.

Gardiner, the profits of the said transactions with the plaintiff and in abuse of his relation of trust."

Plaintiff demanded judgment that the defendant be made to account for all his acts as her agent as set forth in the complaint, and that he be directed to account to the plaintiff for all the profits realized by him and his wife, Adele R. Gardiner, in their transactions with the plaintiff, and that the pretended accounting of January 12, 1907, hereinbefore referred to, be set aside, and be declared fraudulent and void.

Upon the trial of this action, the court made its decision wherein it is found that the alleged accounting of January 12, 1907, was not in fact a full and correct statement of defendant's transactions to that date with and on behalf of the plaintiff; that it contained no statement of the defendant's receipts, payments, charges, and disbursements as trustee to that date, nor has any since been rendered by him; that no explanation of the legal effect and significance of the paper in question was made by defendant to the plaintiff and that the latter received no consideration for her signature thereto; that the defendant, with intent to defraud the plaintiff and to deceive her into signing said paper, willfully and knowingly suppressed and concealed from her the fact that it contained a clause acknowledging the same as correct, and as being a full and satisfactory accounting to the plaintiff to date by the said defendant of all securities held by him for her and of all business transacted by him for her of whatsoever nature to that date; that defendant failed to explain the legal effect of said clause, with intent to defraud the plaintiff and deceive her into signing the same; that the request to sign the paper, beginning as it did with the words, "Received from A. P. Gardiner, the following notes, deeds, mortgages and securities," was made with intent to defraud her and to deceive her by representing that the paper was only a receipt for certain securities, and by withholding from her any knowledge of the fact that it contained a clause purporting to release the defendant from liability for his transactions to that date.

By the conclusions of law embraced in said decision, it was found that the relation between the plaintiff and the defendant was a fiduciary one of trustee and cestui que trust; that the defendant in dealing with the plaintiff's property, real and personal, and its rent, income, and profits, acted as a trustee for her; that plaintiff was entitled to a full judicial accounting from the defendant of each and all transactions with respect to her property as such trustee from the incipiency of such trust; that the paper dated January 12, 1907, did not constitute an accounting by the defendant to the plaintiff of his transactions with her as trustee prior to that date, and that it was void and of no effect as a release.

Certain rules of law were then laid down which were deemed applicable in determining the question as to whether the transactions between the plaintiff as cestui que trust and the defendant as trustee, in which the defendant or his wife participated and received any benefit, were made in good faith; and it was held that the plaintiff was entitled to an interlocutory judgment in accordance with the findings theretofore made, and that a referee be appointed to try, determine, and decide all the issues in the action. An interlocutory judgment

was thereupon made wherein it was adjudged and decreed that the relation between the plaintiff and the defendant was a fiduciary relation of trustee and cestui que trust, that the paper dated January 12, 1907, was not a release nor a bar to plaintiff's right to a full accounting, and appointing a referee "to take and state the account of the defendant and to try, determine, and decide all the issues herein and to make such decisions, findings, and conclusions as may be justified by the evidence and the law upon all of the issues, in accordance with the principles set forth in the decision herein." It was furthermore provided by said judgment:

"That the defendant make full discovery under oath before the referee above named, and account to the plaintiff for each and all of his transactions with respect to her property as trustee and agent of the plaintiff from the incipiency of such trust and agency down to the present time. * * * That on such discovery and accounting the plaintiff is entitled to disaffirm any transaction between the defendant and herself with respect to her property which is not found to be legal and proper in accordance with the principles set forth in the decision herein, and, so far as may be, to be restored to the position in which she was prior to such transaction, or, at her option, to affirm the said transaction, and to have judgment against the defendant for all profits realized by either him or his wife arising out of the said transaction. That, on such discovery and accounting, the plaintiff is entitled to have all of the transactions between her and the defendant investigated, and to have all the rights and equities between her and him adjusted and all proper charges and contracharges made, and to have judgment against the defendant in any such amount as may be found due from him to her on account of any fraudulent practices or acts by defendant with respect to her property, including any and all profits which the said defendant may have derived therefrom, and to have the defendant directed to do all proper things necessary to correct any wrong or fraud of which he may be found to have been guilty against the plaintiff with respect to the said trust, and to have the balance due from one party to the other, if any, found."

From this judgment the defendant appeals.

It is to be noted that defendant's liability to the plaintiff arises from two separate and distinct classes of actions upon his part. First. There is defendant's liability to account to plaintiff, as her trustee, for the receipts and disbursements of moneys belonging to plaintiff and for her property which actually passed into the custody and keeping of defendant as trustee. As to this class of transactions, there can be no question that the defendant is bound to account to the plaintiff, for the receipt of January 12, 1907, upon the testimony, was properly held not to operate as a release nor as a bar to plaintiff's right to an accounting; and the defendant is therefore in the position of never having accounted to plaintiff for his transactions as her trustee and for which he received from her the sum of $1,000, per year, as compensation. Second. There is a class of transactions of which the plaintiff complains, and wherein the plaintiff, relying upon the advice of the defendant given to her as her agent and adviser and business manager, was induced to transfer certain property to the defendant or his wife. The property thus transferred to the defendant's wife consisted of a half interest in the Knickerbocker Stable property, and a half interest in the Yonkers farm property. Plaintiff also transferred directly to the defendant a fourth interest in the Tucker farm and a half interest in the Plainfield house, which latter she afterwards

reacquired from the defendant.  Plaintiff also sold to defendant 115 shares of the Radway Company, part of the purchase price of which was paid by crediting her with the amount of a board bill against her. The plaintiff does not ask that any of these transactions be set aside as fraudulent, nor is it alleged that the profit which it is claimed defendant's wife made from the two transfers to her ever passed to the defendant, or that he was interested in the making of said sales.  The defendant's wife is not a party to this action.

None of the property in question, whether sold to the defendant or to his wife, was ever held by the defendant as trustee.  This is a different case from those where the trustee having possession of trust property sells it and makes a profit upon the transaction for himself at the expense of his cestui que trust.  The plaintiff was of full age when she made these transfers and when she reacquired the interest in the Plainfield house.  There is no allegation of fraud, false representation, or duress upon the part of the defendant in causing any of such transfers to be made, either to himself or to his wife.  All that is charged is that he has caused plaintiff to transfer to him or to his wife valuable property at prices far below their real value, and has caused plaintiff to purchase from defendant or his wife property in excess of its real value.  The proof in the case does not supply this deficiency in the complaint, nor show fraud in relation to these transactions upon the part of the defendant.  For aught that now appears in the record, the plaintiff, being of full age, made these transfers freely and voluntarily, and the defendant was guilty neither of fraud, deceit, nor suppression in relation thereto.  There is no proof that he shared in any way in such profits as his wife may have made upon the transfers, nor is she charged with being a party to any fraud, nor made a defendant in this action.  The plaintiff herself has apparently determined which of these transactions she desires to affirm and ratify and which she desires to repudiate, for by the judgment herein that right was reserved to her to be exercised upon the trial before the referee.

It is apparent, upon the complaint herein as well as upon the proofs, that as to this second class of transactions no reference should have been ordered and so much of the judgment as includes them in the issues to be determined by the referee must be reversed.  It is apparent, as well, that proper practice requires that the question of the validity or invalidity of specific transactions, the good faith of which is questioned, should be tried and determined by the court itself, and not referred; and that, if a reference is found necessary, it should only be to take and state the accounts of the trustee in relation to the property which he received in that capacity, and, further, only in relation to such transactions as the court has upon satisfactory proof determined to be invalid or fraudulent.  The issues which arise upon the pleadings must be tried by the court, and cannot be referred.  Roome v. Smith, 123 App. Div. 418, 107 N. Y. Supp. 1088.

It follows, therefore, that the judgment appealed from must be modified by striking therefrom so much as empowers the referee appointed herein "to try, determine and decide all the issues herein, and to make such decisions, findings, and conclusions as may be justified by the evidence and the law upon all of the issues in accordance with

the principles set forth in the decision herein," together with the three paragraphs hereinbefore quoted providing for the discovery under oath before said referee of all the transactions between the plaintiff and defendant with respect to the former's property wherein defendant acted as trustee and agent, and giving plaintiff the right upon such discovery to disaffirm any transaction with respect to her property. So much of the judgment as directs that a referee be appointed to take and state the account of the defendant is affirmed.

The judgment as thus modified is affirmed, with costs to appellant to abide the final judgment in the action. All concur.